UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| DANIEL CLAY RICE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:21-CV-206-REW |
| | ) | |
| v. | ) | |
| | ) | OPINION & ORDER |
| DUANE LOGAN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This dispute arises from a workplace prank gone far wrong. Plaintiff Daniel Clay Rice was injured, as alleged, when an improvised explosive device ("IED") detonated under him while he was taking a bathroom break. Rice sued his co-workers and their employer. Defendant Corbin Independent School District ("CISD"), an independent school district in the Commonwealth, now moves to dismiss all counts against it. DE 8 (Motion to Dismiss). Rice responded in opposition. DE 12 (Response in Opposition). CISD replied. DE 17 (Reply in Support). The matter is ripe for review. For the reasons discussed below, the Court **GRANTS** DE 8 and dismisses all claims against CISD.

The facts that matter come from Plaintiff's Complaint.[1] On July 13, 2021, Rice worked in the maintenance department for CISD with Defendants Duane Logan, Mark Logan, and Finley Thomas. *Id.* Unbeknownst to Rice, his co-workers installed a small "IED" in a toilet that was

---

[1] The Court, as it must in the Rule 12 context, largely takes these allegations from the Complaint. *See Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996) ("We must treat as true all of the well-pleaded allegations of the *complaint*." (emphasis added)); *See also* DE 1-2 at 5–15 (Complaint). While the state court record is attached in full as one document, the Court references the paragraph numbers when citing to the Complaint, for clarity.

1

rigged to explode the moment Rice sat down. *Id.* at ¶ 8. Rice, taking a bathroom break, sat down, and the IED exploded, causing severe injury to Rice. *Id.* at ¶ 9 Rice called for help, but the maintenance workers did not assist Rice; they instead "continued to ridicule and humiliate" Rice. *Id.* at ¶ 10. Rice then "stopped at the School Board office (around the corner from the maintenance building. Then, he went to the Emergency Room of the local hospital and immediately obtained medical care." *Id.* at ¶ 11.

Rice alleges that CISD threatened to terminate his medical insurance if he did not return to work. *Id.* at ¶ 13. In responding to the motion dismiss, Rice attached the correspondence referenced obliquely in the Complaint. DE 11-1 (Letter from CISD to Rice). The October 7, 2021, letter details when Rice's Family Medical Leave ("FMLA") ends, the impact on Rice's insurance coverage, and Rice's options to stay insured. *Id.* at 1–2. The letter does not comment on Rice's employment status nor mention termination of employment. Rice does not allege his current employment status with CISD, nor does he allege a termination or resignation date.

Rice sued CISD and the three other maintenance workers in Whitley County Circuit Court on October 28, 2021. DE 1-2 at 2. Rice's Complaint has five counts: Kentucky intentional infliction of emotional distress (Count 1), Kentucky common law assault and battery (Count 2), Kentucky and federal wrongful discharge (Count 3), deprivation of Fourth, Fifth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983 (Count 4), and a standalone Kentucky and federal law "punitive damages" claim (Count 5). The case was removed to this Court on December 16, 2021. DE 1 (Notice of Removal). CISD filed its motion to dismiss five days later. DE 8.

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)). "A

2

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "a formulaic recitation of a cause of action's elements will not do." *Twombly*, 127 S. Ct. at 1965. Courts "must construe the complaint in the light most favorable to the plaintiff and accept all allegations [the well-pleaded ones, of course,]as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). Yet, courts need not accept "legal conclusion[s] couched as [] factual allegation[s]." *Papasan v. Allain*, 106 S. Ct. 2932, 2944 (1986).

Generally, "matters outside of the pleadings are not to be considered by a court in ruling on a . . . motion to dismiss." *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997). However, the Court may "consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 467 (6th Cir. 2011) (internal quotation marks and citation omitted). The Court may also consider "exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

Hinging on Rule 8's minimal standards, *Twombly* and *Iqbal* require a plaintiff to "plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014). Where plaintiffs state "simply, concisely, and directly events that . . . entitle[] them to damages," the rules require "no more to stave off threshold dismissal for want of an adequate statement." *Id.*; *El-Hallani v. Huntington Nat. Bank*, 623 F. App'x 730, 739 (6th Cir. 2015) ("Although *Twombly* and *Iqbal* have raised the bar for pleading, it is still low.).

Defendant CISD moves to dismiss all claims against it. DE 8 at 1–2. For the three state claims, CISD argues that it enjoys governmental immunity. *See* DE 8 at 2, 9–15. For the federal claims, CISD argues that Rice has failed to allege any policy or custom or official action that would permit *Monell* liability. *Id.* at 2, 5–9. For the reasons discussed below, the Court agrees and dismisses CISD.

The Court pauses at the jump to note two things. First, the Court observes the peculiarities in Plaintiff's individual claim for punitive damages and his federal wrongful discharge claim. Plaintiff's Complaint cites to KRS 411.184(2) as the basis for the punitive damages claim. DE 1-2 at ¶ 31. That statute merely defines the terms in KRS 411.186, which in turn determines the process "[i]n any civil action where claims for punitive damages are included[.]" Punitive damages may be a valid remedy as to a particular claim, but a separate cause of action does not lie for punitive damages. *See Salisbury v. Purdue Pharma, L.P.*, 166 F. Supp. 2d 546, 548 n.1 (E.D. Ky. 2001); *Vonderhaar v. AT&T Mobility Servs., LLC*, 372 F. Supp. 3d 497, 516 (E.D. Ky. 2019). For the Plaintiff's federal wrongful discharge claim, "it is clear that wrongful discharge is a state-law cause of action." *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 759 (6th Cir. 2000) (recognizing that there is no federal cause of action for wrongful discharge). A prevailing theme in this case is averment ambiguity. Plaintiff is less than clear on the boundaries he charts with his Complaint claims. To the extent that Plaintiff's response indicates that he maintains an independent punitive damages claim and a federal wrongful discharge claim, the Court now dismisses them against CISD as unrecognized theories of recovery, in and of themselves.

Second, Rice's main tool of argument is extra-pleading allegations. Rice, heavy on histrionics, relies largely on the allegation that CISD knew of his co-worker's dangerous prank and chose to neither discipline nor fire them. DE 12-1 at 2 ("[CISD] completely ignored [an anti-

4

bullying policy and an anti-harassment policy] when it did not terminate or even punish the individual defendants."); *id.* at 12 ("The District knew of the detonation of the exploding toilet (how could it not know?), and did not discipline any of the individual defendants."); *id.* at 14 ("[T]he deliberate intention of the individual perpetrators became the deliberate intention of the District when, ignoring its own policies . . ., the District did not discipline the individual perpetrators in any way."); *id.* at 15 ("The District ratified its employees' outrageous behavior by not disciplining them."); *id.* at 16 ("[A]n actual touching of the plaintiff's person by the District [occurs] once the District learns of the explosion and fails to enforce its policies that were adopted just to prohibit that sort of conduct.").

These allegations are in the briefing, but absent from the Complaint. Rice also does not seek leave to amend his complaint to include these new allegations. Rice may not "amend [his] complaint in an opposition brief or ask the court to consider *new* allegations . . . not contained in the complaint." *Bates v. Green Farms Condo Ass'n*, 958 F.3d 470, 483–84 (6th Cir. 2020). "If a complaint fails to state a claim even under the liberal requirements of the federal rules, the plaintiff cannot cure the deficiency by inserting the missing allegations in a document that is not either a complaint or an amendment to a complaint." *Id.* (quoting *Harrell v. United States*, 13 F.3d 232, 236 (7th Cir. 1993)). The Court reviews the Complaint allegations as they stand, judging the pleading from its four corners and the plausible inferences supported.

On the merits, the state claims (intentional infliction of emotional distress, common law assault and battery, and wrongful discharge) are barred by Kentucky governmental immunity. Under Kentucky law, governmental agencies are immune from tort liability when performing governmental functions. *Shadrick v. Hopkins Cty. Ky.*, 805 F.3d 724, 745 (6th Cir. 2015) (citing *Yanero v. Davis*, 65 S.W.3d 510, 519 (Ky. 2001)). A local school board is "entitled to

5

governmental immunity" so long as it is performing a governmental function, rather than a proprietary function. *Yanero*, 65 S.W.3d at 527. Kentucky courts have defined proprietary functions as "non-integral undertakings of a sort private persons or business might engage in for profit." *Breathitt Cty. Bd. of Educ. v. Prater*, 292 S.W.3d 883, 887 (Ky. 2009). They have further found that "education is an integral aspect of state government and that activities in direct furtherance of education will be deemed governmental rather than proprietary." *Id.*

Despite Rice's cramped characterization of the scope of a school district's governmental function as contained "in the classroom[,]" *see* DE 12-1 at 8, the Kentucky Supreme Court has adopted an "expansive approach to defining governmental functions[.]" *B.F. by & Through Fite v. Carter Cnty. Bd. of Educ.*, No. CV 18-18-DLB-EBA, 2018 WL 6331691, at *4 (E.D. Ky. Dec. 4, 2018); *see also Autry v. W. Ky. Univ.*, 219 S.W.3d 713, 718 (Ky. 2007) (granting governmental immunity for student's assault by a non-student because operation of a university dormitory is a governmental function); *Yanero*, 65 S.W.3d at 527 (granting governmental immunity for injury player suffered before a sanctioned baseball game because authorization of interscholastic athletics is a governmental function); *Breathitt Cty. Bd. of Educ.*, 292 S.W.3d at 887–88 (granting governmental immunity for injury a visitor suffered while in a lodge used by the school's night watchperson because the housing furthered the educational mission "by protecting the facilities where that mission is carried out").

Rice's argument in fact, though using the wrong adjective, makes the logical case **for** immunity application. "Along with cooking meals by the school kitchen and restaurant staff, the plaintiff is hard pressed to think of any other activity that is more of a propriety function *than cleaning the buildings to facilitate the governmental function of education*." DE 12-1 at 9. Maintenance of educational facilities is part and parcel of education and has no feature of a private

6

or proprietary bent. Because CISD opted to fulfill that role[2] to further the educational mission of the district, it, through the maintenance program, was performing a governmental function. *See Autry*, 219 S.W.3d at 718 ("Other providers of housing do so as a business, for profit; WKU does so as part of its definitive function.").

Further, on the discharge claim, Rice omits a key component. He nowhere claims CISD has terminated him or that he has left employment. Thus, while he may have had to navigate leave issues, due to an inability to return to work, nothing in the Complaint avers that he lost employment. Without separation, there is no claim for constructive discharge. *Smith v. LHC Group, Inc.*, 727 F. App'x 100, 106–07 (6th Cir. 2018) (discussing the requirements of a Kentucky discharge claim). The Complaint fails as to Counts 1, 2, and 3; the Court dismisses those counts.

Finally, the Court sees a myriad of reasons to dismiss the § 1983 claim against CISD. To begin, Rice does not even attempt to clarify the boundaries of his § 1983 claim. Rice's Complaint oscillates between broad invocations of the Fourth, Fifth, and Fourteenth Amendment and more focused allegations. *Compare* DE 1-2 at ¶ 26 (alleging deprivation of "the rights, privileges and immunities secured to the plaintiff under the Fourth, Fifth and Fourteenth of the federal constitution") *with id.* at ¶ 27 (alleging "[i]n particular, the plaintiff has a constitutional right to be safe from unlawful seizures of his person by a work supervisor of him and by fellow employee [sic]"). Rice's response also does not home in on a specific cause of action. On this basis alone, the Court finds dismissal appropriate, as Rice has left "the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *Questcare, LLC v. Poynter*, No. CIV. 12-

---

[2] The test is of the subject matter of the activity, not the particulars of the alleged tortious misconduct.

7

92-ART, 2013 WL 794376, at *11 (E.D. Ky. Mar. 4, 2013 (quoting *United States v. Zannino*, 859 F.2d 1, 17 (1st Cir. 1990)). The Court denies divining Rice's cause of action.

More pointedly, though, Rice fails to make allegations that plausibly hook CISD as a liable party. Regardless of the specific constitutional violation at issue, Rice is simply attempting to impose *respondeat superior* liability on CISD. *Respondeat superior* liability does not lie in § 1983 actions. *See Monell v. Dep't of Soc. Servs. of City of New York*, 98 S. Ct. 2018, 2036 (1978) ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."). Under § 1983, a municipal defendant's liability must stem from an official policy or custom that causally drove a deprivation of federal rights. *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) ("For liability to attach against Hamilton County under § 1983, the plaintiff must show that deliberate action attributable to the municipality directly caused a deprivation of federal rights." (internal citations and quotation marks omitted)).

The plain text of the Complaint controls, and Rice wastes no time getting to his core theory: "[T]he defendant School District is vicariously liable for the actions of the individual defendants." DE 1-2 at ¶ 1. Under Count 4, the § 1983 Count, Rice alleges that "[a]ll actions taken by the individual defendants to deprive the plaintiff of federally and state constitutionally protected civil rights were done in the course and scope of their employment, the School District being responsible for their act, subject to liability for the unlawful deprivation of the plaintiff's civil rights." *Id.* at ¶ 29. In response to the motion to dismiss, Rice claims that CISD had a duty to discipline the individual Defendants and breached that duty, thus ratifying the individual Defendants' actions by failing to discipline or fire the individual actors. DE 12-1 at 6–8.

The recognized routes to *Monell* municipal liability are the following: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). Plainly, the Complaint does not advert to any policy or custom, does not allege any history of failure to train, cites no pattern or record of incidents, and does not identify or make allegations as to any final policymaker for CISD. Rice's briefing attempts a ratification theory, basically that CISD did not properly discipline the actors and thus ratified the actors' conduct.

The pleading text, contra Rice's response, belies any inference that amounts to a specific policy claim or any action taken by CISD that would amount to ratification of the individual Defendants' actions. Further, the Court, accepting the pleaded facts as true, need only draw *reasonable* inferences. *See Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987) (Courts have no obligation to accept "unwarranted factual inferences."). Here, despite the response *argument*, Plaintiffs did not *plead* any act or decision by a CISD final policymaker and did not allege involvement by such policymaker within the ratification rubric. Moreover, the Court cannot draw a reasonable inference from the Complaint allegation to Rice's conclusion. All Rice says about CISD's possible involvement, if any, is that he "stopped at the School Board office (around the corner from the maintenance building)" before seeking medical attention. DE 1-2 at ¶ 11. From this throwaway allegation, Rice would have the Court infer that CISD was informed of the event,

9

investigated the individual Defendants' actions, and failed to discipline or terminate the individual Defendants. The briefs say this, but the Complaint does not.[3]

Even if the Court were to reasonably infer from Rice's Complaint that CISD failed to investigate, punish, or terminate the individual Defendants, this would still not clear the *Monell* hurdle. "[M]ere acquiescence in a single discretionary decision by a subordinate is not sufficient to show ratification. Otherwise, the City would be liable for all of the discretionary decisions of its employees, and this would be indistinguishable from *respondeat superior* liability." *Feliciano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir. 1993) (citation omitted); *see also Burgess*, 735 F.3d at 479 (noting that a final decision-maker's "after-the-fact approval of the investigation, which did not itself cause or continue a harm[,]" is insufficient to establish *Monell* liability). CISD is correct that any ratification proof must confirm that the ratification itself is part of the moving force behind the instant violation. Sequentially, in a single-incident scenario, acts following the incident, even if sounding in ratification, could not causally produce the antecedent targeted conduct. The Sixth Circuit, as *Feliciano* and *Burgess* show, plainly adheres to the causal requirements indicated. *See also Pineda v. Hamilton Cnty., Ohio*, 977 F.3d 483, 495–96 (6th Cir. 2020); *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012) ("Municipal liability only attaches where a custom, policy, or practice attributable to the municipality was the 'moving force' behind the violation of the plaintiff's constitutional rights." (quoting *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254–55 (6th Cir. 2010)). Allowing an entity's reaction to an isolated event to yield *Monell* liability would, in essence, circumvent the strong bar on vicarious liability under § 1983. This is particularly true on the highly distinct facts of the incident here at issue.

---

[3] Paragraphs 32 and 33 perhaps edge the closest, but the language there concerns prospective effects on CISD, not any averment about the events here or response to such events.

Rice's only remaining avenue is to show CISD's deliberate indifference to his constitutional rights. *See Marchese v. Lucas*, 758 F.2d 181, 188 (6th Cir. 1985); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1248 (6th Cir. 1989). However, this path requires Rice to allege knowledge of constitutional violations *prior* to the alleged harm. *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 701 n.5 (6th Cir. 2006) ("We have not found any legal support for the proposition that, in the absence of deliberate indifference before a constitutional violation, a municipality may be liable for simply failing to investigate or punish a wrongdoer after the violation."). Rice wrestles with none of this and makes no valid claim under the required standards.

By not clearing *Monell*'s strict requirements, the Court finds Rice's § 1983 claim lacking and dismisses Claim 4. Accordingly, the Court **GRANTS** DE 8, in full, and **DISMISSES** Rice's claims against Defendant Corbin Independent School District, **with prejudice**.

This the 1st day of August, 2022.

Signed By:
*Robert E. Wier*  REW
United States District Judge